Mark J. Whitmore, General Counsel Association of Arkansas Counties 1415 West Third Street Little Rock, AR 72201
Dear Mr. Whitmore:
I am writing in response to your request for my opinion regarding a draft agreement you have submitted between Jefferson County, Arkansas and the University of Arkansas at Pine Bluff ("UAPB"). You have inquired whether this document is subject to my review and approval as an interlocal agreement pursuant to A.C.A. §14-14-910 (Repl. 1998). The proposed agreement provides that Jefferson County will provide UAPB with a number of emergency radios under the federally funded Chemical Stockpile Emergency Preparedness Program ("CSEPP"), which in this instance is geared to avoid any chemical accident at the Pine Bluff Arsenal by establishing what the proposed agreement describes as a "digital 800 MHz trunked radio system" that will function "in conjunction with the infrastructure and system of radios maintained by other various governmental entities in Arkansas for this same objective."
Subsection 14-14-910(a) provides:
 Generally. The county court of each county may contract, cooperate, or join with any one (1) or more other governments or public agencies, including any other county, or with any political subdivisions of the state or any other states, or their political subdivisions, or with the United States to perform any administrative service, activity, or undertaking which any contracting party is authorized by law to perform.
In my opinion, it is debatable whether this proposed agreement qualifies as a "county interlocal agreement" under the statutory definition. Section 14-14-910 provides in pertinent part:
 (b)(1) Definitions. "County interlocal agreement" means any service contract entered into by the county court which establishes a permanent or perpetual relationship thereby obligating the financial resources of a county. Grant-in-aid agreements enacted through an appropriation ordinance shall not be considered an interlocal agreement.
 (2) "Permanent or perpetual relationship" means for purposes of this section any agreement exhibiting an effective duration greater than one (1) year, twelve (12) calendar months, or an agreement exhibiting no fixed duration but where the apparent intent of the agreement is to establish a permanent or perpetual relationship. Such interlocal agreements shall be authorized by ordinance of the quorum court. . . .
Read together, these two definitions create a certain logical tension. Subsection (b)(1) suggests that if a county by "service contract" establishes a "permanent or perpetual relationship" with another public entity, it will "thereby" have "obligat[ed] the financial resources" of the county, hence qualifying the contract as a "county interlocal agreement." In the present case, there is no question but that the proposed relationship between the parties would be "permanent or perpetual" under the statutory definition: the agreement expressly recites that it will expire on July 1, 2015, well beyond the year-long duration recited in the statute as warranting the designation of "permanent or perpetual." However, it is unclear why if an agreement qualifies as "permanent or perpetual" it will "thereby" necessarily "obligat[e] the financial resources of a county," consequently triggering a requirement of quorum court approval. In the present case, although the radios at issue are the property of the county, they were reportedly purchased using exclusively federal funds. A question arises, then, whether the proposed arrangement, notwithstanding its "permanent or perpetual" nature, indeed "obligat[es] the financial resources" of the county — the condition that would render the agreement a "county interlocal agreement" subject to approval by myself and the quorum court.
In determining whether your proposed agreement indeed qualifies as a "county interlocal agreement" as defined by statute, I am guided by the principle that the cardinal rule of statutory construction is to give full effect to the will of the legislature. Flowers v. Norris, 347 Ark. 760, 765,68 S.W.3d 289, 292 (2002) ("It is . . . axiomatic that in statutory interpretation matters, we are first and foremost concerned with ascertaining the intent of the General Assembly.") (citing Statev. Havens, 337 Ark. 161, 987 S.W.2d 686 (1999)). The intent that is reflected by an act as a whole should further take precedence over any intent reflected by isolated words or sections. SeeKifer v. Liberty Mutual Insurance Co., 777 F.2d 1325 (8th Cir. 1986); Elizabeth Arden Sales Corp. v. Gus Blass Co.,150 F.2d 988, cert. denied 326 U.S. 773 (1945). Notwithstanding the fact that the statute could be read as suggesting that an agreement's status as "permanent or perpetual" would "thereby" — i.e., as a necessary condition of that status — render it "interlocal" and subject to my approval, I do not believe this is what the legislature intended. Rather, I believe the legislature in all likelihood meant the term "service contract" to refer to a joint undertaking that involves an exchange of monetary consideration and that hence would necessarily "obligat[e] the financial resources" of the county, thereby qualifying the contract as a "county interlocal agreement" requiring my approval if the term of the contract exceeded one year.
If my reading of this statute is correct, your proposed agreement may well not be subject to my approval despite the fact that it clearly calls for a "permanent or perpetual" relationship as that term is statutorily defined. Again assuming my reading of the statute is correct, I believe the county judge, based upon his custody of and control over county property as authorized by Ark. Const. amend. 55, could execute the agreement on his own authority without quorum court approval. However, given the possibility that merely dispensing county property to an agency of the state without receiving any payment therefor might be described as "obligating the financial resources" of the county, it might alternatively be the case that the agreement must comply with the conditions that are required of an interlocal agreement pursuant to A.C.A. § 14-14-901, including the requirement of quorum court approval.
In the event the agreement qualifies as "interlocal," the following requirements set forth at A.C.A. § 14-14-901 will apply:
(c) Contents. An interlocal agreement shall:
 (1) Be authorized and approved by the governing body of each party to the agreement;
 (2) Set forth fully the purposes, powers, rights, obligations, and responsibilities of the contracting parties; and
(3) Specify the following:
(A) Its duration;
 (B) The precise organization, composition, and nature of any separate legal entity created;
(C) The purposes of the interlocal agreement;
 (D) The manner of financing the joint or cooperative undertaking and establishing and maintaining a budget;
 (E) The permissible methods to be employed in accomplishing the partial or complete termination of an agreement and for disposing of property upon partial or complete termination. The methods for termination shall include a requirement of six (6) months written notification of the intent to withdraw by the governing body of the public agency wishing to withdraw;
 (F) Provision for an administrator or a joint board responsible for administering the joint or cooperative undertaking including representation of the contracting parties on the joint board;
 (G) The manner of acquiring, holding, and disposing of real and personal property used in the joint or cooperative undertaking; and
(H) Any other necessary and proper matters.
Assuming your proposed agreement is indeed "interlocal" under the criteria discussed above, I conclude that it contains all of the requisite elements just listed and that it is hereby approved. Again assuming this designation applies, the quorum court will need to approve the agreement prior to its execution.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh